IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MANDI COBB<br>137 Vista Drive<br>Gahanna, OH 43230,<br><br>      Plaintiff,<br><br>v.<br><br>ALVIS INC.<br>2100 Stella Court<br>Columbus, OH 43215<br><br> **Serve Also:**<br> Alvis, Inc.<br> c/o Jacqueline Neal<br> 2100 Stella Court,<br> Unit 308<br> Columbus, OH 43215<br><br>  -and-<br><br>DAVID QUALLS<br>2100 Stella Court<br>Columbus, OH 43215<br><br>  -and-<br><br>MAGGIE MALONE<br>2100 Stella Court<br>Columbus, OH 43215,<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO,<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

  Plaintiff, Mandi Cobb, by and through undersigned counsel, as her Complaint against Alvis Inc., David Qualls, and Maggie Malone (hereinafter, "Defendants"), states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Cobb is a resident of the city of Gahanna, Franklin County, Ohio.

2. Alvis Inc. is a domestic corporation that does business at 2100 Stella Court, Columbus, Franklin County, Ohio.

3. Alvis Inc. is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

4. Qualls is a resident of the State of Ohio.

5. Malone is a resident of the State of Ohio.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Cobb is alleging Federal Law Claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; and 42 U.S.C. § 1981.

7. All material events alleged in this Complaint occurred in Franklin County, Ohio.

8. This Court has supplemental jurisdiction over Cobb's state law claims pursuant to 28 U.S.C. § 1367 as Cobb's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. On or about December 18, 2025, the EEOC issued a Notice of Right to Sue letter to Cobb regarding Cobb's EEOC Charge. See Exhibit A.

11. Cobb has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(a).

## **FACTS**

12. On or about January 26, 2023, Cobb began working for Alvis.

13. Alvis Inc. employed Cobb in the position of operations manager.

14. Cobb's duties included participating in hiring and termination decisions.

15. On or about March 14, 2025, Cobb witnessed Maggie Malone inconsistently enforcing a urine drop policy ("Discriminatory Incident").

16. Malone was an assistant director for Alvis.

17. In the Discriminatory Incident, a White client submitted a sample of a liquid that was not urine, in place of a urine sample during a required urine drop.

18. In the Discriminatory Incident, a Black client tested positive for THC.

19. Malone allowed the White client to submit another sample.

20. Malone allowed the White client to return home.

21. Malone did not take any disciplinary action against the White client for the invalid urine drop.

22. Malone did not permit the Black client to submit another sample after testing positive for THC.

23. Malone did not permit the Black client to return home after testing positive for THC.

24. On or about March 14, 2025, Cobb questioned Malone about the Discriminatory Incident.

25. On or about March 14, 2025, in response to Cobb's concern, Malone became aggressively defensive.

26. On or about March 14, 2025, Malone yelled at Cobb.

27. On or about March 14, 2025, Malone did not provide Cobb with a valid explanation for the Discriminatory Incident.

28. On or about March 14, 2025, Malone did not offer to review the Discriminatory Incident.

29. On or about March 14, 2025, Malone falsely accused Cobb of being insubordinate by asking about the Discriminatory Incident ("False Accusation").

30. Cobb's questioning Malone about the Discriminatory Incident was a protected activity.

31. Malone's False Accusation was retaliation for Cobb's questioning Malone about the Discriminatory Incident.

32. By subjecting Cobb to a False Accusation, Malone made it less likely for a reasonable employee to make a report or oppose conduct like the Discriminatory Incident.

33. On or about March 17, 2025, David Qualls summoned Cobb for a termination meeting due to the False Accusation.

34. Alvis employed David Qualls in the position of Human Resources Supervisor.

35. During the termination meeting, Qualls told Cobb, "You want others to feel like you're the man" ("Quall's Statement").

36. Cobb is a lesbian woman.

37. Qualls made Qualls's Statement because of Cobb's gender identity.

38. Qualls made Qualls's Statement because of Cobb's sexual orientation.

39. During the meeting, Qualls played videos of Cobb's stand-up comedy routine ("Videos").

40. Cobb performed her stand-up comedy routine during her personal time.

41. The videos had no bearing on Cobb's job performance.

42. Qualls played the Videos to defame Cobb.

43. Qualls played the Videos to embarrass Cobb.

44. Qualls played the Videos to embarrass Cobb for being insufficiently feminine.

45. Qualls played the Videos to embarrass Cobb for her sexual orientation.

46. Qualls played the Videos to justify Cobb's removal under false pretenses.

47. Cobb never received a write-up during her tenure.

48. Cobb never received a formal disciplinary warning during her tenure.

49. Qualls was involved in the decision to terminate Cobb's employment.

50. Malone was involved in the decision to terminate Cobb's employment.

51. On or about March 17, 2025, Alvis terminated Cobb's employment because she opposed discrimination.

52. On or about March 17, 2025, Alvis terminated Cobb's employment because of her gender identity.

53. On or about March 17, 2025, Alvis terminated Cobb's employment because of her sexual orientation.

54. The termination was an adverse employment action.

55. On or about March 19, 2025, Toni Corbin included the Videos during a new hire training ("Training").

56. Corbin was a staff member for Alvis.

57. Tershay Martin, an incoming employee for Alvis, was present at the Training.

58. Corbin showed Martin the Videos during the Training.

59. Ashley Portis, an incoming employee of Alvis, was present at the Training.

60. Corbin showed Portis the Videos during the Training.

61. Joletha Mahogany Rhodes, an incoming employee of Alvis, was present at the Training.

62. Corbin showed Rhodes the Videos during the Training.

63. Corbin had no legitimate purpose in showing the Videos during the Training.

64. Corbin showed the Videos during the Training to humiliate Cobb.

65. Corbin showed the Videos during the Training to discriminate against Cobb.

66. As a direct and proximate result of Defendants' conduct, Cobb suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: GENDER AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII

### (Defendant Alvis)

67. Cobb restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. Cobb is a member of a statutorily protected class based on her gender under Title VII.

69. Cobb is a member of a statutorily protected class based on her sexual orientation under Title VII.

70. Defendants treated Cobb differently than other similarly situated employees based on her gender.

71. Defendants treated Cobb differently than other similarly situated employees based on her sexual orientation.

72. Defendants discriminated against Cobb on the basis of her gender during her employment with the company.

73. Defendants discriminated against Cobb on the basis of her sexual orientation during her employment with the company.

74. Defendants terminated Cobb's employment without just cause.

75. Defendant's terminated Cobb's employment based on her gender.

76. Defendant's discrimination against Cobb based on her gender violates Title VII.

77. As a direct and proximate result of Defendant's conduct, Cobb suffered and will continue to suffer damages, including economic and emotional distress and physical sickness damages.

### COUNT II: GENDER AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF R.C. § 4112.02

**(Defendant Alvis)**

78. Cobb restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. Cobb is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

80. Cobb is a member of a statutorily protected class based on her sexual orientation under R.C. § 4112.02.

81. Defendants treated Cobb differently than other similarly situated employees based on her gender.

82. Defendants treated Cobb differently than other similarly situated employees based on her sexual orientation.

83. Defendants discriminated against Cobb on the basis of her gender during her employment with the company.

84. Defendants discriminated against Cobb on the basis of her sexual orientation during her employment with the company.

85. Defendants terminated Cobb's employment without just cause.

86. Defendants terminated Cobb's employment based on her gender.

87. Defendants' discrimination against Cobb based on her gender violates R.C. § 4112.01 *et seq.*

88. As a direct and proximate result of Defendants' conduct, Cobb suffered and will continue to suffer damages, including economic and emotional distress and physical sickness damages.

## COUNT III: RETALIATION FOR OPPOSING DISCRIMATION IN VIOLATION OF TITLE VII

### (Defendant Alvis)

89. Cobb restates each and every prior paragraph of this complaint, as if it were fully restated herein.

90. As a result of Malone's discriminatory conduct described above, Cobb complained about the discrimination she witnessed.

91. Malone's actions were retaliatory in nature based on Cobb's opposition to the unlawful discriminatory conduct.

92. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against a person for engaging in protected activity under Title VII.

93. As a direct and proximate result of Defendants' conduct, Cobb suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: RETALIATION FOR OPPOSING RACIAL DISCRIMATION IN VIOLATION OF 42 U.S.C § 1981

**(All Defendants)**

94. Cobb restates each and every prior paragraph of this complaint, as if it were fully restated herein.

95. As a result of Malone's discriminatory conduct described above, Cobb complained about the discrimination she witnessed.

96. Malone's actions were retaliatory in nature based on Cobb's opposition to the unlawful discriminatory conduct.

97. Pursuant to 42 U.S.C. § 1981, it is an unlawful discriminatory practice to retaliate against a person for opposing unlawful race discrimination.

98. As a direct and proximate result of Defendants' conduct, Cobb suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: RETALIATION FOR OPPOSING RACIAL DISCRIMATION IN VIOLATION OF R.C. § 4112.02(I)

**(All Defendants)**

99. Cobb restates each and every prior paragraph of this complaint, as if it were fully restated herein.

100. As a result of Malone's discriminatory conduct described above, Cobb complained about the discrimination she witnessed.

101. Malone's actions were retaliatory in nature based on Cobb's opposition to the unlawful discriminatory conduct.

102. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

103. As a direct and proximate result of Defendants' conduct, Cobb suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

**(Defendants Qualls and Malone)**

104. Cobb restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

106. Qualls and Malone aided, abetted, incited, coerced, and/or compelled Alvis's discriminatory termination of Cobb's employment.

107. Qualls and Malone aided, abetted, incited, coerced, and/or compelled Alvis's discriminatory suspension of Cobb's employment.

108. Qualls and Malone aided, abetted, incited, coerced, and/or compelled Alvis's discriminatory treatment of Cobb.

109. Qualls and Malone violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

110. As a direct and proximate result of Qualls and Malone's conduct, Cobb has suffered and will continue to suffer damages, including economic and emotional distress damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Cobb respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Alvis to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Cobb for emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Cobb's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Mandi Cobb*

## JURY DEMAND

Plaintiff Cobb demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)

11